ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
NATALIE S. TORRES, SBN 283571
Supervising Deputy Attorney General
CHRIS HAN, SBN 319314
PETER F. NASCENZI, SBN 311664
JENNIFER MCCLORY HAMILTON, SBN 219465
DAVID C. GOODWIN, SBN 283322
Deputy Attorneys General
1300 I Street, Suite 125
Sacramento, CA 95814
Telephone: (916) 210-7805
Fax: (916) 327-2319
E-mail: Peter.Nascenzi@doj.ca.gov
*Attorneys for People of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROCKY PATEL PREMIUM CIGARS, INC.**, OLIVIA CIGAR CO., PILOTO CIGARS, INC. D/B/A PADRON CIGARS, INC., A. FUENTE & CO., LLC, ASHTON DISTRIBUTORS, INC., PREMIUM IMPORTS, INC. D/B/A LA FLOR DOMINICANA, MY FATHER CIGARS, INC., CIGAR RIGHTS OF AMERICA, AND PREMIUM CIGAR ASSOCIATION,<br><br>Plaintiffs,<br><br>**v.**<br><br>ROB **BONTA**, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA**,**<br><br>Defendant. | Case No: 8:25-cv-02244-MRA-PD<br><br>**DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: December 15, 2025<br>Time: 1:30 p.m.<br>Courtroom: 9B, 9th Floor<br>Judge: Hon. Mónica Ramírez Almadani<br>Trial Date: N/A<br>Action Filed: October 3, 2025 |

# TABLE OF CONTENTS


Page

Introduction ..... 1
Procedural History ..... 1
Background ..... 2
A. Plaintiffs Failed to Secure Legislative Exemption ..... 2
B. The Legislature Directed Attorney General to Establish and Maintain UTL ..... 2
Legal Standard ..... 4
Argument ..... 4
I. Plaintiffs Have No Likelihood of Success on the Merits ..... 4
A. The First Amended Complaint Seeks Inconsistent Relief ..... 4
B. The Federal Tobacco Control Act Explicitly Preserves State Laws Like AB 3218, Law Is Not Preempted ..... 6
C. The UTL Does Not Implicate First Amendment Rights ..... 12
II. The Remaining Preliminary Injunction Factors Also Weigh Against the Requested Injunction ..... 15
A. Plaintiffs Have Not Established That They Will Suffer Irreparable Harm ..... 16
B. On Balance, Injunction Harms the Public Interest ..... 19
Conclusion ..... 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Altria Grp., Inc. v. Good*
555 U.S. 70 (2008)....................6

*ArchitectureArt, LLC v. San Diego*
231 F. Supp. 3d 828 (S.D. Cal. 2017)....................14

*Austin v. Tennessee*
179 U.S. 343 (1900)....................9

*Buckman Co. v. Plaintiffs' Legal Comm.*
531 U.S. 341 (2001)....................11

*Central Hudson Gas & Electric Corp. v. Public Service Commission*
447 U.S. 557 (1980)....................14

*Clark v. Cmty. for Creative Non-Violence*
468 U.S. 288 (1984)....................12

*DISH Network Corp. v. FCC*
653 F.3d 771 (9th Cir. 2011)....................16

*E. Bay Sanctuary Covenant v. Trump*
354 F. Supp. 3d 1094 (N.D. Cal. 2018)....................17

*Edge v. City of Everett*
929 F.3d 657 (9th Cir. 2019)....................4

*Garcia v. Google, Inc.*
786 F.3d 733 (9th Cir. 2015)....................4

*Global Horizons, Inc. v. U.S. Dep't of Labor*
510 F.3d 1054 (9th Cir. 2007)....................15

*Golden State Transit Corp. v. City of Los Angeles*
493 U.S. 103 (1989)....................5

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*
736 F.3d 1239 (9th Cir. 2013)....................16

## TABLE OF AUTHORITIES (continued)


**Page**

*Iowans for Alts. to Smoking & Tobacco, Inc. v. Iowa Dep't of Revenue*
781 F. Supp. 3d 724 (S.D. Iowa 2025) ........................................ 12

*League of Wilderness Defs./Blue Mountains Biodiversity Proj. v. Connaughton*
752 F.3d 755 (9th Cir. 2014) ........................................ 19

*Lorillard Tobacco Co. v. Reilly*
533 U.S. 525 (2001) ........................................ 13, 14

*Maryland v. King*
567 U.S. 1301 (2012) ........................................ 19

*Matthews v. Eldridge*
424 U.S. 319 (1976) ........................................ 20

*McCormack v. Hiedeman*
694 F.3d 1004 (9th Cir. 2012) ........................................ 4

*Medtronic, Inc. v. Lohr*
518 U.S. 470 ........................................ 9

*Nat. Res. Def. Council v. Cal. Dep't of Transp.*
96 F.3d 420 (9th Cir. 1996) ........................................ 5

*Nken v. Holder*
556 US 418 (2009) ........................................ 19, 20

*Porretti v. Dzurenda*
11 F.4th 1037 (9th Cir. 2021) ........................................ 4

*R.J. Reynolds Tobacco Co. v. County of Los Angeles*
29 F.4th 542 (9th Cir. 2022) ........................................ *passim*

*Sprietsma v. Mercury Marine*
537 U.S. 51 (2002) ........................................ 7

*Stein v. Ryan*
662 F.3d 1114 (9th Cir. 2011) ........................................ 5

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Trucking Ass'ns, Inc. v. City of Los Angeles*
559 F.3d 1046 (9th Cir. 2009)....................17

*U.S. Smokeless Tobacco Mfg. Co. v. City of New York*
708 F.3d 428 (2d Cir. 2013)....................6, 8

*Utah Vapor Bus. Ass'n Inc. v. Utah*
Case No. 2:24-cv-00950-DBB-JCB, 2025 WL 2170136 (Feb. 13, 2025)....................11

*Valenzuela v. City of Anaheim*
6 F.4th 1098 (9th Cir. 2021)....................5

*Vapor Tech. Ass'n v. Wooten*
Case No. 4:25-CV-00076-M-RJ, 2025 WL 1787420 (E.D.N.C. June 27, 2025)....................11

*Will v. Mich. Dep't of State Police*
491 U.S. 58 (1989)....................5

*Winter v. Nat'l Res. Def. Council, Inc.*
555 U.S. 7 (2008)....................4, 16, 20

*Wisconsinites for Alts. to Smoking & Tobacco, Inc. v. Casey*
25-cv-552-wmc, 2025 WL 2582099 (W.D. Wisc. Sept. 5, 2025)....................11

*Ex parte Young*
209 U.S. 123 (1908)....................4

**STATUTES**

21 U.S.C.
§ 331(a)....................11
§ 331(b)....................11
§ 331(c)....................11
§ 331(e)....................11
§ 331(f)....................11
§ 331(g)....................11
§ 331(p)....................11
§ 331(q)....................11

## TABLE OF AUTHORITIES (continued)


**Page**

§ 331(qq) ....... 11
§ 387 note ....... 10
§ 387e(j) ....... 9, 10
§ 387j ....... 10
§ 387j(a)(2) ....... 8
§ 387j(b) ....... 8
§ 387j(c)(1)(A) ....... 8
§ 387p ....... 7
§ 387p(a)(1) ....... 9
§ 387p(a)(2)(A) ....... 7, 8
§ 387p(a)(2)(B) ....... 11

AB 3218, 2024 Cal. Legis. Serv. ch. 849 (West) (codified at Cal. Health & Safety Code §§ 104559.1, .5, and scattered sections of Cal. Bus. & Prof. Code) ....... 1

Cal. Health & Safety Code
§ 104559.1(a) ....... 2
§ 104559.1(b)(1)(A) ....... 3
§ 104559.1(b)(1)(B) ....... 3, 10
§ 104559.1(b)(1)(C) ....... 3
§ 104559.1(b)(2) ....... 14, 17
§ 104559.1(b)(2)(A) ....... 3
§ 104559.1(b)(3)(A) ....... 3
§ 104559.1(c) ....... 3, 14
§ 104559.1(d) ....... 13, 14
§ 104559.1(k)(1) ....... 3
§ 104559.1(*l*) ....... 3
§ 104559.1(m) ....... 3, 5
§ 104559.1(o) ....... 10, 14
§ 104559.1(o)(1) ....... 9
§ 104559.1(o)(3) ....... 14
§ 104559.1(q) ....... 3
§ 104559.1(s)(2) ....... 13
§ 104559.1(s)(3) ....... 2
§ 104559.5(a)(1) ....... 13
§ 104559.5(a)(2) ....... 13
§ 104559.5(a)(6) ....... 13

## TABLE OF AUTHORITIES (continued)

Page

§ 104559.5(a)(13) .......... 2
§ 104559.5(e) .......... 2

Family Smoking Prevention and Tobacco Control Act of 2009 Pub. L. No. 111-31, 123 Stat. 1776 (codified at 15 U.S.C. §§ 1331–1340, 4401–4408; 21 U.S.C. 387–387u) .......... 6

SB 793, 2020 Cal. Legis. Serv. ch. 34 (West) (codified at Cal. Health & Safety Code section 104559.5) .......... 2

**OTHER AUTHORITIES**

Cal. Code Regs. tit. 11
§ 945(c)(12) .......... 14
§ 948(b) .......... 10
§ 949 .......... 14, 17
§ 954 .......... 3

Cigar Catalog, Rocky Patel, https://tinyurl.com/3625mj7s .......... 19

Div. Law Enf't, Cal. Dep't Just., Info. Bull. No. 2025-DLE-17, Enforcement of Flavored Tobacco Products 1, Enforcement of Flavored Tobacco Products, (Nov. 10, 2025), https://tinyurl.com/4ssy2nsx .......... 3

Notices of Determination 23-04-A1, -A4 (Cal. Dep't Just. June 12, 2023), https://.com/3yevjm64 .......... 13

Press Release, J.C. Newman Registers 163 Cigars in California (Oct. 15, 2024), https://tinyurl.com/ybfrbzdb .......... 18

## INTRODUCTION

Plaintiffs seek a preliminary injunction to exempt their products from the requirements of AB 3218, 2024 Cal. Legis. Serv. ch. 849 (West) (codified at Cal. Health & Safety Code §§ 104559.1, .5, and scattered sections of Cal. Bus. & Prof. Code) but fall short of meeting their burden to justify such an extraordinary remedy. First, Plaintiffs present fatally flawed arguments that fail on the merits: their claims against the Attorney General are procedurally defective; the tobacco statutes and regulations at issue establish sales restrictions expressly preserved from federal preemption; and AB 3218 does not restrict Plaintiffs' or anyone else's First Amendment rights. Second, Plaintiffs do not show that they would suffer cognizable harm in the absence of an injunction. Instead, an injunction would significantly harm the public interest by undermining the legislative process and the will of the voters, thereby stalling enforcement by the Attorney General and local agencies to protect Californians from addictive flavored tobacco products. For all these reasons, the balance of interests weighs heavily against granting preliminary injunctive relief, and Plaintiffs' Motion for Preliminary Injunction, ECF No. 23, should be denied.

## PROCEDURAL HISTORY

Plaintiffs filed the instant suit on October 3, 2025, and four days later sought a TRO (Appl. TRO), ECF No. 9. That filing sought "at minimum" to extend the last date that the Attorney General guaranteed review in advance of the Unflavored Tobacco List's (UTL) statutory publishing date of December 31, 2025, from October 9, 2025, to December 1, 2025, for tobacco products considered "premium cigars" under federal regulations. Appl. TRO 10, 11–12 (citing 21 C.F.R. § 1114.3). Defendant filed an opposition, ECF No. 12, on October 8, 2025. The Court denied Plaintiffs' Application that same day, ECF No. 15, finding the request "likely barred by the Eleventh Amendment," *id.* at 5–6. Plaintiffs filed a First Amended Complaint (FAC), ECF No. 20, on October 28, 2025, dropping their California

APA claim and restyling their remaining causes of action to allege violations of 42 U.S.C. § 1983. Plaintiffs subsequently filed the instant Motion for Preliminary Injunction, ECF No. 23, on November 17, 2025, based on three of the five causes of action in the FAC. Defendant filed a Motion to Dismiss the FAC, ECF No. 24, the next day.

## BACKGROUND

### A. Plaintiffs Failed to Secure Legislative Exemption

Five years ago, the Legislature sought to limit sales of flavored tobacco products in the State, including banning flavored cigars, and three years ago—following a statewide referendum and various constitutional challenges seeking to strike down those limits—the law went into effect. When initially drafted, that law, known as the California flavor ban or SB 793, 2020 Cal. Legis. Serv. ch. 34 (West) (codified at Cal. Health & Safety Code section 104559.5), included nearly all tobacco products, but the final enacted bill added several carve-outs, including exempting "premium cigars," Cal. Health & Safety Code § 104559.5(e). Instead of adopting a broad definition that mirrored federal law, the Legislature deliberately chose to define "premium cigars" narrowly. AB 3218 borrows the definition of "tobacco product" from the State flavor ban law and excludes from the UTL those same "premium cigars" excluded from the flavor ban law. *See id.* § 104559.1(s)(3) (referencing section 104559.5(a)(13)); *id.* § 104559.5(a)(13) (defining "tobacco product" to exclude certain cigars as "premium cigars").

### B. The Legislature Directed Attorney General to Establish and Maintain UTL

As explained in Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss (Mot. Dismiss.), ECF No. 24-1, the Legislature, through AB 3218, directed the Attorney General to "establish and maintain on the Attorney General's internet website a list of tobacco product brand styles that lack a characterizing flavor" known as the Unflavored Tobacco List or UTL. Cal. Health

& Safety Code § 104559.1(a). Under AB 3218, submissions to the UTL must "[d]escribe[] each brand style, brand, and tobacco product category," including "cigars [and] little cigars;" and describe for each brand style whether federal Food and Drug Administration (FDA) authorization was sought and the status of any such request; and to "[c]ertif[y] that each brand style lacks a characterizing flavor." *Id.* § 104559.1(b)(1)(A)–(C). "[A] manufacturer or importer shall provide additional information and factual substantiation regarding a brand style's lack of characterizing flavor" and "additional information and documentation regarding tobacco product status, packaging, or marketing of a brand style." *Id.* § 104559.1(b)(2)(A), (3)(A). The Attorney General determines whether each submitted product has a characterizing flavor, considering "among other factors, information received from the manufacturer or importer to the Attorney General regarding the brand style." *Id.* § 104559.1(c).

The statute authorizes the Attorney General to promulgate emergency regulations to implement the UTL requirements, *id.* § 104559.1(q), and outlines the process for challenging the Attorney General's determinations, *id.* § 104559.1(*l*). The law requires the Attorney General to publish the UTL by "December 31, 2025." *Id.* § 104559.1(m). The statute authorizes the Attorney General to assess initial and renewal fees for processing each application, "up to one thousand dollars ($1,000) per brand style." *Id.* § 104559.1(k)(1). The current fees are $300 per product and $150 per previously submitted product. Cal. Code Regs. tit. 11, § 954. On November 10, 2025, the California Department of Justice (DOJ), Division of Law Enforcement also issued an Information Bulletin stating that upon publication of the UTL, DOJ's enforcement priority will continue to be focused on "'obviously flavored' tobacco products and tobacco product flavor enhancers," while emphasizing education and outreach to manufacturers that did not timely register their unflavored products on the UTL. *See* Div. Law Enf't, Cal. Dep't Just., Info. Bull. No. 2025-DLE-17, Enforcement of Flavored Tobacco Products 1,

Enforcement of Flavored Tobacco Products, (Nov. 10, 2025), https://tinyurl.com /4ssy2nsx.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.* 555 U.S. 7, 22 (2008). "[T]he purpose of a preliminary injunction is to preserve the status quo between the parties pending a resolution of a case on the merits." *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012). Under the *Winter* test, a "plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[W]hen the government opposes a preliminary injunction," as here, the balance of equities and public interest "merge into one inquiry." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021). The court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. However, the "[l]ikelihood of success on the merits is the most important factor" in obtaining a preliminary injunction. *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019). If the moving party fails to show a likelihood of success on the merits, the court "need not consider the remaining three [*Winter* elements]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (alteration in original).

## ARGUMENT

### I. PLAINTIFFS HAVE NO LIKELIHOOD OF SUCCESS ON THE MERITS

#### A. The First Amended Complaint Seeks Inconsistent Relief

The FAC seeks inconsistent relief and is thus fatally flawed. Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring suit against an individual in his or her official capacity to seek "prospective injunctive relief

that governs the official's future conduct," but not "retroactive relief that requires the payment of funds from the state treasury," *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 422 (9th Cir. 1996).

Plaintiffs, however, identify 42 U.S.C. § 1983 as the source for each of their five causes of action, *see* FAC ¶¶ 85, 101, 112, 124, 135, and seek attorneys' fees and costs consistent with that vehicle, *see* FAC 35 (citing 42 U.S.C. § 1988). Rather than aimed at the fully prospective relief Plaintiffs request, "§ 1983 was meant to be a remedial statute" for when a person is deprived of rights under color of state law. *Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1102 (9th Cir. 2021). And though official-capacity prospective injunctive relief is available under § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989), Plaintiffs identify no deprivation of rights they have suffered that would justify invoking § 1983 in the first instance, *cf. Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011) ("An action under section 1983 has two essential elements: '(1) the defendants acted under color of law, and (2) their conduct deprived [the plaintiff] of a constitutional right.'"). Nor could they—AB 3218's enforcement provisions come into effect only after the UTL is published for the first time "on or before December 31, 2025." Cal. Health & Safety Code § 104559.1(m).

Failing to identify any such deprivation, yet funneling each of their claims through § 1983, Plaintiffs FAC is fundamentally flawed. Moreover, even if Plaintiffs could have alleged a deprivation of rights, § 1983 is not a proper vehicle to vindicate claims made under the Supremacy Clause. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989) ("[T]he Supremacy Clause, of its own force, does not create rights enforceable under § 1983." (footnote omitted)).

///

///

///

### B. The Federal Tobacco Control Act Explicitly Preserves State Laws Like AB 3218, Law Is Not Preempted

AB 3218 is not preempted, either expressly or impliedly—enjoining the law would contradict the Ninth Circuit's determination that state and local flavor bans are legally valid. *See R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542, 547 (9th Cir. 2022). The Ninth Circuit upheld state and local flavor bans, affirming their constitutionality and compatibility with the Family Smoking Prevention and Tobacco Control Act (TCA), a federal law passed in 2009, Pub. L. No. 111-31, 123 Stat. 1776 (2009) (codified at 15 U.S.C. §§ 1331–1340, 4401–4408; 21 U.S.C. 387–387u). In *County of Los Angeles*, the Court stated that "Congress 'made an explicit decision to preserve for the states a robust role in regulating, and even banning, sales of tobacco products.'" 29 F.4th at 550 (*U.S. Smokeless Tobacco Mfg. Co. v. City of New York*, 708 F.3d 428, 436 (2d Cir. 2013)). To support this decision, the TCA features a "unique three-layered preservation provision" that ensures the validity of AB 3218. *Id*. Consequently, Plaintiffs have no likelihood of success on the merits of their preemption claims.

#### 1. Preservation, Preemption, and Savings Clauses

As explained in Defendant's Motion to Dismiss, ECF No. 24-1, any analysis of "the scope of a statute's pre-emptive effect is guided by the rule that '"[t]he purpose of Congress is the ultimate touchstone" in every pre-emption case.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485)). Regardless of whether the question is one "of express or implied pre-emption," the analysis begins "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress"—an assumption that "applies with particular force when Congress has legislated in a field traditionally occupied by the States," as it has done here. *Id.* at 77. Where Congress adopts an express preemption clause, the "task of statutory construction must in the first instance

focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Sprietsma v. Mercury Marine*, 537 U.S. 51, 62–63 (2002).

Section 387p(a)(1) of the TCA, the initial preservation clause, "broadly preserves" state and local authority "to enact a variety of regulations that are in 'addition to, or more stringent than' the TCA's requirements," including laws "prohibiting the sale . . . of tobacco products [to] individuals of any age." *County of Los Angeles*, 29 F.4th at 553 (alterations in original) (emphasis removed) (quoting 21 U.S.C. § 387p(a)(1)). The preemption clause in § 387p(a)(2)(A) then "carves out eight limited exceptions to the preservation clause," *County of Los Angeles*, 29 F.4th at 553, for state or local "requirement[s] . . . relating to" federal "tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products," 21 U.S.C. § 387p(a)(2)(A). Each of those exceptions "relates most obviously to the production or marketing stages—and not the retail sale—of tobacco products[.]" *County of Los Angeles*, 29 F.4th at 553–54. Finally, the "savings clause immediately follows the preemption clause and 'except[s]' broad categories from preemption, including 'requirements relating to the sale . . . of[] tobacco products [to] individuals of any age." *Id.* at 555 (quoting 21 U.S.C. § 387p(a)(2)(B)). It "reinforces what [the TCA] first established in the preservation clause: that the regulation and prohibition of tobacco product sales falls squarely within the purview of states, localities, and tribal entities." *Id.*

The TCA's unique "Preservation" provision, 21 U.S.C. § 387p, "sandwiches limited production and marketing categories of preemption between clauses broadly preserving and saving local authority, including any 'requirements relating to the sale' of tobacco products." *County of Los Angeles*, 29 F.4th at 555. It creates "a careful balance of power between federal authority and state, local, and tribal authority," under which "Congress has allowed the federal government to set the

standards regarding how a product would be manufactured and marketed, but has left states, localities, and tribal entities the ability to restrict or opt out of that market altogether." *Id.*; *see also U.S. Smokeless*, 708 F.3d at 432, 434.

**2. AB 3218 is Expressly Safeguarded from Preemption**

Despite the TCA's explicit allowance for state authority to enact regulations that are in "addition to, or more stringent than' the TCA's requirements," *County of Los Angeles*, 29 F.4th at 553 (citing 21 U.S.C. § 387p(a)(1)), Plaintiffs allege that the TCA prohibits a State "from establishing its own 'premarket review' scheme," Mot. Prelim. Inj. 9, referring to AB 3218 as a TCA 'premarket review' process—which it is not.

First, AB 3218 also does not impose any requirement on the premarket review regime implemented by the TCA and FDA. Under the TCA, certain tobacco products are subject to FDA premarket review. *See* 21 U.S.C. § 387j(a)(2). Such products require submission of an application, *see id.* § 387j(b), before those products are "introduced or delivered for introduction into interstate commerce," *id.* § 387j(c)(1)(A). AB 3218 imposes no requirement on the introduction or receipt of tobacco products in interstate commerce, or on the manufacture of tobacco products, nor a requirement that is "relating to . . . premarket review" under the TCA, so is not subject to the Act's preemption clause. *Id.* § 387p(a)(2)(A); *see also County of Los Angeles*, 29 F.4th at 553 (describing the TCA's eight preemption categories as "relat[ing] most obviously to the production or marketing stages").[1]

Second, even if construed as "relating to" the TCA's premarket review process, AB 3218 is expressly saved from preemption by the TCA's savings clause. AB 3218 implements the State's ban on flavored tobacco products by requiring that

[1] Seeking to avoid *County of Los Angeles*, Plaintiffs claim the Ninth Circuit distinguished sales-focused measures from "direct regulation of manufacturers." Mot. Prelim. Inj. 11. But the Court did not. Instead, it distinguished such measures from regulation of "how a product would be manufactured or marketed." *County of Los Angeles*, 29 F.4th at 555. AB 3218 does not regulate either and places no restriction on tobacco manufacturing in California or elsewhere. It requires certification that products are unflavored before they are sold in the State.

manufacturers demonstrate their product is unflavored before it is listed on the UTL. And if a product is not listed on the UTL, AB 3218 prohibits the sale of that product by "a distributor or a wholesaler . . . to any retailer, wholesaler, or other person for sale in California." Cal. Health & Safety Code § 104559.1(o)(1). That "ban on the sale of [certain] tobacco products is, simply put, a requirement that tobacco retailers . . . not sell [those] tobacco products." *County of Los Angeles*, 29 F.4th at 558.

Plaintiffs argue that this straightforward reading of the statute "would read the term 'premarket review' out of the preemption clause." Mot. Prelim. Inj. 11–12. Not so. States are preempted from adding requirements to the federal scheme. Thus, States cannot, for example, require that tobacco products obtain premarket review from the FDA when statutorily exempt from that federal requirement. *See* 21 U.S.C. § 387e(j). The preemption clause makes explicit that the federal government, and only the federal government, has authority over the federal review process that the TCA established. By preempting only requirements "in addition to, or more stringent," than those imposed by the TCA, 21 U.S.C. § 387p(a)(1), the TCA explicitly permits the imposition of requirements *equivalent to* those imposed by the Act, as well as penalties for failing to abide by those federal requirements. *Cf. Medtronic*, 518 U.S. at 495 ("The presence of a damages remedy does not amount to the additional or different 'requirement' that is necessary under the statute; rather, it merely provides another reason for manufacturers to comply with identical existing 'requirements' under federal law.").

States have a "longstanding role as the primary regulators of tobacco products," dating back to more than a century before Congress enacted the TCA. *County of Los Angeles*, 29 F.4th at 548. That tradition has included laws that "prohibit the[] sale entirely" of certain products. *Austin v. Tennessee*, 179 U.S. 343, 348–49 (1900). In light of that "extensive background of state tobacco regulation, it would have been surprising if Congress had broadly jettisoned" state authority,

*County of Los Angeles*, 29 F.4th at 549, to establish mechanisms aimed at determining whether tobacco products comply with local laws before they can enter the marketplace. That is especially so given that the express purpose of Congress in enacting the TCA was "to set national standards controlling the manufacture of tobacco products and the identity, public disclosure, and amount of ingredients used in such products," 21 U.S.C. § 387 note, not to displace longstanding state authority over tobacco sales restrictions.

**3. AB 3218 Does Not Conflict with the TCA**

The TCA requires that certain tobacco products receive an order from the FDA before they are manufactured or introduced into interstate commerce. *See* 21 U.S.C. § 387j. Similarly, when a product would otherwise require such an order, it can be exempted from that requirement if it is shown to be "substantially equivalent" to a product that does not require such premarket order. *Id.* § 387e(j). As part of the UTL application process, manufacturers and importers describe whether they have sought FDA authorization to manufacture or introduce their products into interstate commerce, pursuant to the TCA, and the status of the request. *See* Cal. Health & Safety Code § 104559.1(b)(1)(B). AB 3218 allows the Attorney General to deny listing on the UTL when the product has not met FDA guidance. *Id.* The regulations promulgated under AB 3218 prohibit the listing of any tobacco product that has not received FDA authorization unless the applicant demonstrates the product is not subject to the TCA's preclearance provisions. Cal. Code Regs. tit. 11, § 948(b).[2] And in prohibiting the sale of such products, *see* Cal. Health & Safety Code § 104559.1(o), AB 3218 effectuates a sales prohibition that is expressly preserved to the State by the TCA.

Nevertheless, Plaintiffs claim these provisions "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,"

[2] Section 948(a) implements certain exemptions from enforcement the State identified as already put in place by FDA.

and are thus preempted. Mot. Prelim. Inj. 13 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Plaintiffs point to the TCA's requirement that the Act shall be "enforced exclusively by the Federal Government," *id.* (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352 (2001)) and allege that AB 3218 "creates a parallel state-level enforcement mechanism for the federal premarket review requirements," *id.* at 14. AB 3218 does no such thing.

AB 3218 does not enforce the TCA. The TCA addresses the manufacture and marketing of tobacco products—its enforcement consists broadly of (1) preventing the manufacture of prohibited products or introduction of such products into interstate commerce, *see, e.g.*, 21 U.S.C. § 331(a)–(c), (g); and (2) ensuring compliance with the provisions of the TCA that allow FDA to determine which products can be manufactured or introduced into interstate commerce, *see, e.g.*, *id.* § 331(e)–(f), (p)–(q), (qq). AB 3218 neither prohibits (1) the manufacture of any tobacco product or the introduction of any tobacco product into interstate commerce, nor (2) enforces any provision of the TCA itself. Instead, AB 3218 uses FDA's determinations to delineate whether certain products are lawful for sale in California. *See id.* § 387p(a)(2)(B).

Because AB 3218 does not require any determination of whether there has been any violation of the TCA, the statute, at most, implements permissible "state-law causes of actions that parallel federal safety requirements." *Buckman*, 531 U.S. at 353; *see also Wisconsinites for Alts. to Smoking & Tobacco, Inc. v. Casey*, 25-cv-552-wmc, 2025 WL 2582099, at *8 (W.D. Wisc. Sept. 5, 2025) (finding a similar law not to be impliedly preempted); *Vapor Tech. Ass'n v. Wooten*, Case No. 4:25-CV-00076-M-RJ, 2025 WL 1787420, at *5 (E.D.N.C. June 27, 2025) (same); *Utah Vapor Bus. Ass'n Inc. v. Utah*, Case No. 2:24-cv-00950-DBB-JCB, 2025 WL 2170136, at *11 (Feb. 13, 2025) (same). As a sales restriction, AB 3218 does not reach into the province of FDA or otherwise enforce the TCA, but instead uses

///

information generated by the TCA to determine whether tobacco products should be lawful for sale in the State.

Ignoring the majority of courts that have addressed directory laws like AB 3218 and found them entirely consonant with the TCA, Plaintiffs instead focus on the *one* court that held differently. *See* Prelim. Inj. 14 (citing *Iowans for Alts. to Smoking & Tobacco, Inc. v. Iowa Dep't of Revenue*, 781 F. Supp. 3d 724 (S.D. Iowa 2025), *appeal docketed*, No. 25-2087 (8th Cir. June 2, 2025)). The statute at issue in that case did not simply prohibit the sale of tobacco products that did not receive the necessary authorization from the FDA; it instead broadly prohibited "shipping or receiving vapor products in violation of this subchapter." *Iowans*, 781 at 740. The court got it wrong. As the court concluded, the State could prohibit the products in question, *see id.* at 741 ("States may permissibly ban all [vapor] products . . . ."), thus, it is not clear precisely what "conflict" the court identified, or what "goal" the Iowa statute "interfere[d] with," *id.* Indeed, any state law prohibiting the sale of a tobacco product authorized by FDA "places [a State] in the position of making its own judgments," *id.*, which the Ninth Circuit has already found not in conflict with the TCA, *see County of Los Angeles*, 29 F.4th at 561.

Plaintiffs do not, *because they cannot*, identify a single federal goal that AB 3218 interferes with. Plaintiffs merely take issue with the method by which the State determines whether a tobacco product is flavored or not. Nothing in the TCA requires a particular method for determining whether a product falls within a state's product ban. Plaintiffs have no likelihood of success on their preemption causes of action, and their motion should be denied.

### C. The UTL Does Not Implicate First Amendment Rights

#### 1. AB 3218 Does Not Restrict Speech

AB 3218 places no bar on Plaintiffs from communicating with the public in any way, and so the First Amendment is not implicated in the first instance. *See, e.g.*, *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984) ("[I]t

is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies."). Nevertheless, Plaintiffs claim "the statute restricts the manner in which premium cigar manufacturers and importers may describe their products." Mot. Prelim. Inj. 15. It does not.

Instead, AB 3218 imposes a presumption that the product is flavored when manufacturers or importers, such as Plaintiffs, "ha[ve] made a statement or claim directed to consumers or to the public that the tobacco product has or produces a characterizing flavor, including, but not limited to, any text, color, or images on the product's labeling or packaging, that explicitly or implicitly communicates that the tobacco product has a characterizing flavor." Cal. Health & Safety Code § 104559.1(d). Thus, the UTL merely presumes that when a manufacturer *says* their product tastes like coffee or licorice, it probably does.

Nor is that presumption determinative; it may be rebutted by the manufacturer or importer. *Id.* If an applicant demonstrates that a tobacco product does not contain any constituent that imparts a characterizing flavor, *see id.* § 104559.1(s)(2); *id.* § 104559.5(a)(1)–(2), (6), the product can become listed. *Cf.* Notices of Determination 23-04-A1, -A4 (Cal. Dep't Just. June 12, 2023), https://tinyurl.com /3yevjm64 (determining Kool Non-Menthol was not a "flavored tobacco product" "[b]ased on the absence of any reported or significantly detected cooling agents or additives . . . imparting a characterizing flavor"). No speech restriction is at play here.

The First Amendment is not at issue simply because Plaintiffs feel that regulatory paperwork is a burden. Rather, regulations that restrict sales "unrelated to the communication of ideas," *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 569 (2001), like AB 3218, are valid. Failure to conform to the UTL's procedures for certifying tobacco products as unflavored has consequences, but those consequences do not punish Plaintiffs for their views—they impose consequences

///

for failing to comply with the UTL when a product falls within the scope of the law. *See*, *e.g.*, Cal. Health & Safety Code § 104559.1(o)(3).

**2. The Complained-of "Burden" is Narrowly Tailored**

Assuming for the sake of argument that AB 3218's presumption constitutes a speech restriction, the presumption "directly and materially advanc[es] the asserted governmental interest," *Lorillard*, 533 U.S. at 555, of the flavor ban and the UTL's related purpose of ferreting out flavored products where tobacco manufacturers are not forthcoming with that detail. The presumption, accordingly, satisfies the test applicable to commercial speech established by *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). *Contra* FAC ¶ 74.

The presumption merely establishes that when a manufacturer says its product has a characterizing flavor, *it probably does*. By specifically allowing the manufacturer or importer to rebut the presumption that the tobacco products are impermissibly flavored, *see* Cal. Health & Safety Code § 104559.1(d), AB 3218 provides a particularly tailored "fit between the legislature's ends and the means chosen to accomplish those ends, . . . a means narrowly tailored to achieve the desired objective," *Lorillard*, 533 U.S. at 556 (ellipsis in original) (quoting *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 632 (1995)). Thus, even construing the complained-of presumption as a burden on Plaintiffs' speech, its rebuttability means that "alternative avenues" remain available for that speech. *Id.* at 563. Plaintiffs can (1) include such information in their initial application, *see* Cal. Health & Safety Code § 104559.1(c); Cal. Code Regs. tit. 11, § 945(c)(12); or, (2) provide it in response to a request for more information, *see* Cal. Health & Safety Code § 104559.1(b)(2); Cal. Code Regs. tit. 11, § 949.

Plaintiffs' "vagueness" claim, Mot. Prelim. Inj. 18–19, fails for similar reasons. AB 3218 makes abundantly clear what is illegal, namely, selling tobacco products that are not listed on the UTL. *See* Cal. Health & Safety Code § 104559.1(o); *ArchitectureArt, LLC v. San Diego*, 231 F. Supp. 3d 828, 840 (S.D.

Cal. 2017) (describing the issue of vagueness as including punishing "people 'for behavior they could not have known was illegal'"). Whether a product is initially flagged as "flavored," due to Plaintiffs' published "tasting notes" or flavors observed in the product itself, a request for additional information to confirm that determination may be triggered, and Plaintiffs can demonstrate it is not. If a reviewer detects "notes of coffee" from Rocky Patel's "Conviction premium cigar" or discovers that its Java Red is advertised as "coffee-infused," the Attorney General has a duty to confirm whether either product contains a prohibited flavor before listing them on the Unflavored Tobacco List.

Finally, Plaintiffs' contention that "premium cigars . . . are unrelated to the considerations underlying the State's ban on flavored tobacco products" "because they are unflavored," Prelim. Inj. 17, misunderstands the UTL entirely. *Every* product on the UTL is unflavored, and manufacturers and importers need to submit applications *only* for unflavored products. The UTL framework works to admit unflavored tobacco products and places the onus on the manufacturer or importer to demonstrate that the product is, in fact, unflavored before it can be sold downstream into the State's consumer market. To exempt premium cigars "because they are unflavored" would not impose a "less restrictive" alternative, Mot. Prelim. Inj. 17, 18, but turn the entire statute and UTL on its head.

Plaintiffs need to make no modifications to their speech, and thus their First Amendment claims fail.

## II. THE REMAINING PRELIMINARY INJUNCTION FACTORS ALSO WEIGH AGAINST THE REQUESTED INJUNCTION

Because Plaintiffs "ha[ve] not shown any chance of success on the merits, no further determination of irreparable harm or balancing of hardships is necessary." *Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007). Nevertheless, Plaintiffs have also failed to demonstrate the remaining two factors: irreparable injury or that an injunction weighs in the public interest.

### A. Plaintiffs Have Not Established That They Will Suffer Irreparable Harm

Plaintiffs fail to establish that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20 (clarifying that plaintiffs must show something more than just a possibility). A party seeking injunctive relief must provide evidence of likely irreparable harm and cannot rely on "unsupported conclusory statements regarding harm [they] might suffer." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013). As set forth above, Plaintiffs' evidence does not support their conclusions.

#### 1. Plaintiffs have not suffered a First Amendment Injury

Irreparable injury is not automatically presumed merely because a constitutional violation is alleged. *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011) ("While a First Amendment claim 'certainly raises the specter' of irreparable harm and public interest considerations, proving the likelihood of such a claim is not enough to satisfy *Winter*.") Plaintiffs must still establish the likelihood of irreparable harm absent a preliminary injunction, as well as the other *Winter* factors. *Id.* at 776.

Here, Plaintiffs fail this test for all the same reasons their claim fails on the merits. Plaintiffs will not suffer harm under the UTL, because the UTL does not impose an unlawful burden on their speech. AB 3218 does not censor Plaintiffs' speech (in the past, present, or future), and Plaintiffs point to no evidence that they (or anyone else) have self-censored marketing, advertising, or other communications connected to their tobacco products because of the law. AB 3218 merely prompts the Attorney General to look to additional information to determine whether a tobacco product is flavored. Because Plaintiffs fall far short of presenting a colorable First Amendment claim, they have not shown that they will suffer any imminent and certain injury sufficient to grant them "extraordinary relief" by way of this motion. *Winter*, 555 U.S. at 22.

**2. Application Fees or Speculative Harm does not amount to Irreparable Harm**

To the extent Plaintiffs allege that UTL application fees, or their own administrative costs associated with the UTL application requirements amount to an irreparable harm, *see* Mot. Prelim. Inj. 4, 19–20, these ordinary business costs are nominal and do not rise to an irreparable harm. *Cf. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) (affirming injunction where the plaintiffs demonstrated they would incur "large costs" or be forced to give up their businesses); *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1116 (N.D. Cal. 2018) (issuing injunction after the plaintiffs demonstrated that they faced a substantial loss of funding).

Plaintiffs' assertion that they will be wrongfully required to pay application fees fails because these fees are properly and statutorily mandated by the Legislature under AB 3218. The statute permits the Attorney General to recoup up to $1,000 per application (although the present charge is $300 for each new application and $150 for subsequent submissions). The Attorney General's review of UTL applications is underway, and the fees imposed offset the Attorney General's administration of the UTL—staff time and resources have already been expended. Just like paying state licensing fees, UTL fees are part of the price of selling tobacco products in California.  It is not an "injury" for Plaintiff to comply with the law when the law is proper, as it is here. As for Plaintiffs' administrative costs, it appears that Plaintiffs have exaggerated the UTL requirements. The basic application can be completed by filling out a two-page form on the Attorney General's web portal and attaching pictures that identify the product so that it may be accurately listed on the UTL. It is not necessary to submit "reams" of paperwork. *See* Cal. Health & Safety Code § 104559.1(b)(2); Cal. Code Regs. tit. 11, § 949.

///

Plaintiffs' cries of financial injury from a loss of sales are also speculative; they have failed to provide any evidence of such harm. It is not enough to show the possibility of irreparable harm in the indefinite future. Plaintiffs are free to make informed business decisions about whether the UTL fees exceed the profits for specific cigars and whether to continue selling them in California or to work within the State's regulatory framework. At least one cigar company publicly confirmed it chose to timely filed 163 applications to ensure that "virtually all of [its] cigars [sold] in California fully comply with the state's new UTL requirements," to "help [their] retailers and prevent them from being stuck with products they can no longer legally sell." Press Release, J.C. Newman Registers 163 Cigars in California, (Oct. 15, 2024), https://tinyurl.com/ybfrbzdb. Plaintiffs allegations of monetary harm are not due to the regulation itself, but rather to failing to submit product applications. To this end, Plaintiffs may still apply for product approval for the UTL as the Attorney General continues to review applications on a rolling basis. Nevertheless, Plaintiffs claimed financial burdens do not rise to the level of imminent and inevitable irreparable harm warranting an injunction.

### 3. Retailer and Consumer Inconvenience is Not Harm

Plaintiffs argue that cigar retailers will also suffer from the implementation of AB 3218 because they will "be forced to inform customers that their favorite products are no longer offered for sale." Mot. Prelim. Inj. 21. Setting aside the fact that retailers may have more limited sales offerings because manufacturers or importers failed to submit UTL applications, Plaintiffs' proposed solution creates problematic confusion that the UTL seeks to eliminate. The result of applying the federal definition to designate a broader swath of cigars as "premium cigars" and, thereby, exempting them from complying with the flavor ban regulations is that consumers, retailers, wholesalers, distributors, and enforcement officials will not know which products are subject to the State's flavor ban. What, then, is the difference between a cigar that has *notes of coffee* created solely from the tobacco

used in its construction and is exempted from the UTL, from a *coffee-infused* cigar that is subject to the State's flavor ban?[3] Plaintiffs do not say, and the practical result is confusion.

### B. On Balance, Injunction Harms the Public Interest

Before a preliminary injunction may issue, the court must assess the harm to the opposing party and weigh the public interest—these "merge when the Government is the opposing party." *Nken v. Holder*, 556 US 418, 435 (2009). Courts should give the public interest element "separate attention in cases where the public interest may be affected." *League of Wilderness Defs./Blue Mountains Biodiversity Proj. v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). Importantly, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012).

#### 1. An Injunction Will Harm Californians

California is a national leader in protecting its residents from the harms of tobacco use. The Legislature first sought to ban sales of flavored tobacco products more than five years ago to combat the public health vaping crisis and the tobacco industry's exploitation of California's youth. The Legislature enacted AB 3218 to improve the ban's implementation and enforcement. Enjoining any portion of the UTL would undermine the regulatory framework created by the Legislature to ensure that only unflavored tobacco products are lawful for sale in California. Plaintiffs' proposal to exempt federally defined "premium cigars" from complying with UTL requirements would thwart the purpose of the law. Plaintiffs' motion rebuffs the statutory definitions, clearly adopted by the Legislature and the Attorney General's regulatory authority, and seeks to undo what the UTL law requires: provide a single list of approved unflavored tobacco products.

[3] *Compare* Cigar Catalog, Rocky Patel, https://tinyurl.com/3625mj7s (advertising Java Red, a coffee-infused cigar), *with* Mot. Prelim. Inj. 16–17, ECF No. 23 (describing tobacco-only cigars as having coffee tasting notes).

Allowing the cigar industry to hold the law hostage would delay the Attorney General from providing important and complete information to local enforcement and public health agencies regarding which tobacco products may be lawfully sold. Incomplete information would complicate compliance checks at retail stores and allow unlawful products to remain on the shelves. Further, an injunction would disrupt and complicate the Attorney General's review of UTL applications, jeopardizing his ability to meet the legislatively mandated UTL publication deadline of December 31, 2025.

**2. Plaintiffs Can Make Business Decisions that Mitigate Harm**

Plaintiffs are clearly informed about what they cannot do: sell or possess flavored tobacco products and they have been made aware of the timing of these restrictions. Additionally, the UTL grants extensive rights to challenge either the Attorney General's determinations as to a product or an enforcing agency's decision to prosecute any putative violation. *See Matthews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" (alteration in original)). At most, Plaintiffs advance an abstract and mitigatable "possibility of irreparable injuries." *Nken*, 556 U.S. at 435. As the Supreme Court has emphasized, the "possibility standard is too lenient" a basis upon which to issue the drastic remedy of a preliminary injunction. *Winter*, 555 U.S. at 22. Ultimately, an injunction would decidedly mar the Legislature's and the voter's efforts to combat the public health crisis associated with tobacco use.

**CONCLUSION**

For the reasons provided above, Plaintiffs' Motion for Preliminary Injunction, ECF No. 23, should be denied.

Dated: November 24, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Peter F. Nascenzi*

PETER F. NASCENZI
Deputy Attorney General
*Attorney for Defendant Rob Bonta, in his official capacity as Attorney General for the State of California*

SA2025305658
39478294

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Rob Bonta, in his official capacity as Attorney General for the State of California, certifies that this brief contains 6,552 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 24, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Peter F. Nascenzi*

PETER F. NASCENZI
Deputy Attorney General
*Attorney for Defendant Rob Bonta, in his official capacity as Attorney General for the State of California*